# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JANISHA C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 22-cv-00381 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| KILOLO KIJAKAZI, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Janisha C. seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423, 1381–1383f. Specifically, Plaintiff claims that the Administrative Law Judge ("ALJ") who denied her application erred when he failed to consider medical records that he deemed untimely submitted. Moreover, even on the record before him, Plaintiff contends that there was insufficient evidence to support the ALJ's conclusion that Plaintiff was not disabled within the meaning of the statute. For the reasons that follow, the Court finds that the ALJ committed no error and his decision was supported by substantial evidence. The decision is therefore affirmed.

## BACKGROUND

Plaintiff filed the underlying application for disability benefits and supplemental security income on May 3, 2019. (Administrative R. ("A.R.") at 15, Dkt. Nos. 8-1, 8-2.[1]) According to Plaintiff, she is disabled due to her chronic asthma, and she alleges a disability onset date of

---

[1] Pages 1 through 806 of the Administrative Record can be found at Docket Number 8-1, and pages 807 through 1015 are at Docket Number 8-2.

March 1, 2016. (*Id.* at 15, 38, 277.) As of the date of her application, Plaintiff was 25 years old. (*Id.* at 245.)

Plaintiff has a history of asthma dating back to her childhood. (*Id.* at 19.) Prior to her alleged disability onset date, Plaintiff had a history of periodically experiencing severe exacerbations of her asthma that required hospitalization. (*Id.* at 386–87, 415–16.) On April 27, 2016, Plaintiff underwent a pulmonary function study that revealed moderate obstructive and moderate concentric restrictive ventilatory defects with significant response to inhaled bronchodilator. (*Id.* at 427.) Later, in June 2016, another study yielded improved results that were nonetheless described as "still quite abnormal." (*Id.* at 706.) On January 28, 2018, Plaintiff reported to the emergency room with an asthma exacerbation. (*Id.* at 500.) The attending physician noted that, in the preceding days, Plaintiff had fevers, body aches, cough, and shortness of breath; and the day before, she started vomiting. (*Id.*)

Between August 2018 and March 2020, Plaintiff's pulmonologists consistently observed that she suffered from "severe persistent asthma." (*E.g.*, *id.* at 689, 692, 694, 1013.) Pulmonary function tests taken in January 2019 and March 2020 each continued to reveal moderate obstructive and restrictive defects. (*Id.* at 552, 1015.) As of March 17, 2021, Plaintiff reported receiving Xolair injections every two weeks and taking Flonase and albuterol as needed. (*Id.* at 1009.) She also had a prednisone prescription for use during asthma exacerbations. (*Id.*) Plaintiff's pulmonologist noted that the Xolair yielded significant improvement in her obstruction. (*Id.* at 1010.) Still, on March 17, Plaintiff reported that she was starting to have an exacerbation. (*Id.*)

During a hearing before the ALJ held on May 6, 2021, Plaintiff testified that she had to go to the hospital approximately every other month due to asthma exacerbations, although she

2

conceded that the last time she was hospitalized was in 2019 and credited her Xolair. (*Id.* at 55–56.) At the same time, Plaintiff reported that she continued to have smaller asthma attacks that she could handle on her own without hospitalization. (*Id.* at 56.) She testified that, in the previous three months, she had at least four smaller exacerbations that would last for about a week. (*Id.* at 57.) When experiencing smaller asthma attacks, Plaintiff testified that her lungs would tighten, she would get wheezy, and she had difficulty breathing. (*Id.* at 57–58.) To control those attacks, Plaintiff would take prednisone every four hours and would spend up to two hours on a breathing machine. (*Id.*) Even when she was not in the midst of an exacerbation, Plaintiff claimed that she needed to use her rescue inhaler over 10 times a day. (*Id.* at 59.) Plaintiff testified that she had previously tried to work but was incapable of handling even low-stress jobs because she was unable to sit for extended periods and required frequent breaks. (*Id.* at 60.) In addition, she stated that, during exacerbations, she would be unable to go into work. (*Id.*)

Following the hearing, the ALJ issued a written decision finding that Plaintiff was not disabled. (*Id.* at 15–24.) While the ALJ agreed that Plaintiff's asthma constituted a severe impairment, he nonetheless concluded that she had the residual functional capacity ("RFC") to perform light work subject to the following limitations: occasional climbing ramps, stairs, ladder, ropes, and scaffolds; avoiding exposure to extreme cold and heat, and humidity; and avoiding even moderate exposure to environmental irritants such as fumes, odors, dusts, and gases, to poorly ventilated areas, and to chemicals. (*Id.* at 18–19.) The ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical and other evidence in the record. (*Id.* at 20.) He explained that the overall record failed to support Plaintiff's "more extreme allegations" concerning her claimed limitations in standing and walking. (*Id.* at 22.)

In reaching his conclusion, the ALJ found persuasive the opinions of two state agency medical consultants, who opined that, while Plaintiff's asthma was a severe medically determinable impairment, it did not preclude her from working at the light level of physical exertion. (*Id.* at 21.) Moreover, the ALJ took note of the opinions of Plaintiff's treating sources but determined that they were not fully consistent with other evidence in the record and thus not persuasive. (*Id.* at 21–22.) Upon considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that she was capable of performing work that existed in significant numbers in the national economy. (*Id.* at 23–24.) Consequently, the ALJ concluded that Plaintiff was "not disabled." (*Id.* at 24.)

## DISCUSSION

A federal court reviews "an ALJ's disability determination deferentially." *Weatherbee v. Astrue*, 649 F.3d 565, 568 (7th Cir. 2011). Its review is confined to the rationales offered by the ALJ and the court asks only whether the decision is supported by substantial evidence. *Shauger v. Astrue*, 675 F.3d 690, 695–96 (7th Cir. 2012). "Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision." *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). The reviewing court's job is not to "reweigh the evidence or substitute [its] own judgment for that of the Commissioner." *Id.* Still, where the ALJ denies benefits, his decision must "build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). On the other hand, remand is warranted when an ALJ's decision contains a legal error. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).

To determine whether a claimant is disabled, the ALJ employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). That process requires the ALJ to ask, in the following order: (1) whether the claimant is not currently engaged in substantial gainful activity;

4

(2) whether the claimant has a severe medically determinable physical or mental impairment; (3) whether the impairment meets the criteria of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant's RFC renders her unable to perform her past relevant work; and (5) whether the claimant's RFC, age, education, and work experience make her unable to adjust to other work existing in significant numbers in the national economy. *Id.* "A negative conclusion at any step (except for step three) precludes a finding of disability. An affirmative answer at steps one, two, or four leads to the next step. An affirmative answer at steps three or five results in a finding of disability." *Young v. Sec'y of Health & Hum. Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Here, Plaintiff challenges the ALJ's ruling on two grounds. As a threshold matter, she argues that the ALJ erred in failing to consider medical evidence that he improperly deemed untimely submitted and, for that reason alone, his decision must be reversed and remanded. Even if the ALJ did not err in excluding that evidence, Plaintiff contends that his determination of Plaintiff's RFC was not supported by substantial evidence, thereby leading him incorrectly to conclude that Plaintiff was not disabled.

  **I.**  **Excluded Medical Records**

To begin, Plaintiff faults the ALJ for refusing to consider medical records that would have strongly supported her contentions as to the frequency and incapacitating effects of her asthma exacerbations. The ALJ declined to consider those records because they were not submitted to him at least five business days in advance of the scheduled hearing date nor was he alerted to their existence sufficiently in advance of the hearing.

Under 20 C.F.R. § 404.935(a), a claimant "must make every effort to ensure that the [ALJ] receives all of the evidence and must inform [the ALJ] about or submit any written evidence . . . no later than 5 business days before the date of the scheduled hearing." If a

5

claimant fails to comply with the five-business-day deadline, the ALJ "may decline to consider or obtain the evidence" subject to certain exceptions set forth at § 404.935(b). *Id.* There is no question that Plaintiff did not submit the relevant medical records to the ALJ by the five-business-day deadline. Nonetheless, she claims that she complied with § 404.935(a) by timely notifying the ALJ that she was still working to obtain those records and intended to submit them in advance of the hearing. (Pl.'s Mem. in Supp. of Summ. J., Ex. B, Dkt. No. 9-2.) It is well-established that the five-business-day rule "does not require a claimant to obtain and submit all relevant records more than five days prior to a hearing; rather, it requires the claimant to inform the ALJ of the records' existence by that deadline." *Kevin M. v. Kijakazi*, No. 20 C 6451, 2023 WL 1992186, at *3 (N.D. Ill. Feb. 14, 2023) (internal quotation marks omitted).

Had the ALJ declined to consider medical records of which he had been timely informed, then Plaintiff undeniably would be entitled to have his decision reversed and remanded. Unfortunately for Plaintiff, there is no question that the ALJ was not timely informed of the existence of the additional medical records. Rather, Plaintiff provided notification by way of a letter dated and submitted on Friday, April 30, 2021. The hearing was held as scheduled on Thursday May 6, 2021. That means Plaintiff's letter was submitted to the ALJ *four* business days prior to the hearing. Apparently, her counsel believed that the April 30 letter was timely because he counted May 6 as one of the business days. But that was an error. The regulation is clear, the deadline is "5 business days *before the date* of the scheduled hearing," 20 C.F.R. 404.935(a) (emphasis added), which would have been April 29.

Plaintiff does not squarely confronts the fact of her miscalculation. She also does not argue that one of the relevant exceptions applies to excuse her mistake. Nor could she. "Mistakes by a party's own lawyer are not listed in the regulations as exceptions to the five-day rule.

6

Plaintiff is bound by the actions of [her] lawyer." *Whitten v. Saul*, No. 20-1778, 2021 WL 2803102, at *4 (E.D. La. July 6, 2021). The language of § 404.935(a) allowed but did not require that the ALJ exclude Plaintiff's evidence. If this Court were in the ALJ's position, it may well have exercised its discretion, excused Plaintiff's calculation error, and considered her evidence. But how this Court might have exercised discretion is immaterial—the ALJ acted within his authority under § 404.935(a), and thus the call was solely his to make.

## II. Substantial Evidence

Plaintiff argues that, even on the evidence actually considered, the ALJ's decision that she was not disabled was not supported by substantial evidence. Specifically, she claims that the ALJ incorrectly determined that Plaintiff was capable of performing light work. Thus, Plaintiff's challenge centers on the ALJ's determination of her RFC.

Prior to proceeding to the fourth and fifth steps, an ALJ must first assess a claimant's RFC. *Varga v. Colvin*, 794 F.3d 809, 812 (7th Cir. 2015). RFC refers to the most work-related activities a claimant can perform despite their limitations and is to be assessed based on all the relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). The ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." SSR 96-8p. Further, "an ALJ must articulate in a rational manner the reasons for his assessment of a claimant's [RFC], and in reviewing that determination a court must confine itself to the reasons supplied by the ALJ." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). Again, "the ALJ himself must connect the evidence to the conclusion through an accurate and logical bridge." *Id.* (internal quotation marks omitted).

First, Plaintiff asserts that the ALJ mischaracterizes Plaintiff's own subjective testimony regarding her limitations as "extreme." An ALJ's determination of a claimant's credibility "will

stand as long as there is some support in the record." *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (internal quotation marks omitted). Thus, this Court may "only overturn the ALJ's credibility determination if it is patently wrong, which means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). The ALJ's determination clears this lenient standard.

In finding a lack of support for Plaintiff's subjective complaints regarding her ability to work, the ALJ noted inconsistencies between her testimony and the record medical evidence. For example, he noted that Plaintiff's testimony about the frequency and intensity of her respiratory distress was belied by the absence of records documenting recent severe flareups and records of examinations where she was observed to walk normally and obtain normal oxygen saturation on room air. Further, he found that the evidence showed that her respiratory symptoms were well-controlled when she adhered to her Xolair injection schedule. The ALJ also noted inconsistency between Plaintiff's claim in a 2020 function report that she was unable to care for her mother, prepare meals, drive, or shop, and her previous acknowledgment in a 2019 report that she engaged in all of those activities. And he also questioned Plaintiff's claim to have little to no tolerance for odors and other irritants when she lived with a smoker—albeit one who supposedly smoked outside. In response, Plaintiff points to evidence supporting her claim of disability and other purportedly mitigating circumstances. But this Court cannot "substitute [its] judgment for the ALJ's when considering the weight of the evidence, and [Plaintiff] must do more than point to a different conclusion that the ALJ could have reached to demonstrate that the credibility determination was patently wrong." *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010).

In addition, Plaintiff contends that the ALJ's assessment of the evidence of her treating medical providers as unpersuasive was not supported by substantial evidence. In particular, the

8

ALJ gave little weight to the assessment of a nurse practitioner who evaluated Plaintiff and concluded that she had severe limitations in her ability to perform work-related activities. (A.R. at 21–22.) The ALJ was not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, in evaluating the persuasiveness of any given medical opinion, the ALJ was required to consider factors such as "supportability" and "consistency." *Id.* Here, the Court finds that the ALJ appropriately reasoned that the nurse practitioner's evaluation was not consistent with the medical evidence or even Plaintiff's own testimony. Indeed, while the nurse practitioner stated that Plaintiff experienced asthma attacks more than once a month, the ALJ saw no objective medical evidence demonstrating attacks occurring at that frequency. (A.R. at 22.) Similarly, the ALJ noted that the nurse practitioner's opinion that Plaintiff's asthma interfered with her ability to concentrate or tolerate stress was not reflected anywhere else in the record and was undermined by the fact that Plaintiff testified to studying five to ten hours a day in connection with classes she took online. (*Id.* at 22, 47–48.)

Plaintiff also faults the ALJ for declining to consider her treating pulmonologist's opinion that Plaintiff "frequently is unable to work or engage in normal activities when her asthma is flared up." (*Id.* at 22, 705.) But the ALJ correctly disregarded that opinion insofar as the pulmonologist simply reached a conclusion on an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1520b(c)(3)(i) (including statements that a claimant is unable to work among the evidence that "is inherently neither valuable nor persuasive"). Moreover, the ALJ further explained that the pulmonologist's opinion was unpersuasive because it was based on a pulmonary-function test that was taken when Plaintiff was not on Xolair, given that the Xolair demonstrably improved her respiratory functioning. (A.R. at 22.)

9

Instead of deferring to those opinions from Plaintiff's treating providers, the ALJ agreed with the opinions from two state-agency medical consultants that ascribed less severe limitations to Plaintiff. (*Id.* at 21.) He found that their opinions were more supported by the objective evidence and each was consistent with the other. The ALJ also observed that one of the consultants was a pulmonary and allergy specialist. Notably, Plaintiff does not contend that the consultants' evaluations were unsound. And given the evidence supporting their conclusions, the ALJ was entitled to rely on their opinions in determining Plaintiff's RFC. *See Devon T. v. Saul*, No. 18 C 7004, 2020 WL 496609, at *11 (N.D. Ill. Jan. 30, 2020) ("[T]he opinion of a non-examining state agency consultant is the type of medical evidence an ALJ may rely upon to craft a claimant's RFC.")

In sum, the Court finds that there was substantial evidence supporting the ALJ's conclusion that Plaintiff was able to perform certain types of light work. Given the absence of a challenge to his determination that there were sufficient jobs in the national economy that could be performed by someone with Plaintiff's RFC, the ALJ did not err in finding that Plaintiff is not disabled. His decision is therefore affirmed.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision denying Plaintiff's application for disability insurance and supplemental security income is affirmed.[2] The Clerk is directed to enter Judgment in favor of the Commissioner.

ENTERED:

Dated: August 7, 2023

_____
Andrea R. Wood
United States District Judge

---

[2] Pursuant to Rule 5 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g), it is no longer necessary for parties to style requests for relief as motions for summary judgment. Accordingly, the Commissioner's motion for summary judgment in its favor (Dkt. No. 10) will be terminated as moot.